IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 91-2946

———————————————


LAWRENCE R. ALBERTI, ET AL.,

                              Plaintiffs,

                    versus

THE SHERIFF OF HARRIS COUNTY, TEXAS, ET AL.,

                              Defendants-Third Party
                              Plaintiffs-Appellees,

                    versus

ANN RICHARDS, THE GOVERNOR OF THE
STATE OF TEXAS, ET AL.,

                              Defendants-Third Party
                              Defendants-Appellants.


———————————————

No. 91-2996

———————————————


IN RE:  GOVENOR ANN RICHARDS, ET AL.,

                              Petitioners.

No. 91-6062

LAWRENCE R. ALBERTI, ET AL.,

                                        Plaintiffs-Appellees,

                        versus

THE SHERIFF OF HARRIS COUNTY, TEXAS, ET AL.,

                                        Defendants-Third Party
                                        Plaintiffs, Appellees-
                                        Cross Appellants,

                        versus

ANN RICHARDS, THE GOVERNOR
OF TEXAS, ET AL.,

                                        Third Party Defendants,
                                        Appellants-Cross Appellees.


No. 91-6206

LAWRENCE R. ALBERTI,

                                        Plaintiff,

                        versus

THE SHERIFF OF HARRIS COUNTY, ET AL.,

                                        Defendants-Third Party
                                        Plaintiffs-Appellees,

                        versus

ANN RICHARDS, THE GOVERNOR
OF TEXAS, ET AL.,

                                        Defendants-Third Party
                                        Defendants-Appellants.


Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

PER CURIAM:

I

In Alberti I, 937 F.2d 984 (5th Cir. 1991), we affirmed virtually all of the rulings by the district court except we remanded for findings required by the Supreme Court's intervening decision in Wilson v. Seiter, 111 S.Ct. 2321 (1991). We remanded to allow the district court to find whether the state and county had acted with deliberate indifference. Alberti I, 937 F.2d at 1000. We left to the judgment of the district court whether additional hearings or evidence was necessary. Id.

The district court did not hold hearings but found on the basis of the record evidence that the state and the county acted with deliberate indifference to the constitutional rights of felons in the Harris County jail.

II

The state's arguments repeat many earlier made. The county presents more difficult questions.

In Alberti I we observed that there was "strong if not compelling evidence of deliberate indifference to the plight of these ready-felons." 937 F.2d at 999.[1] Nonetheless, the state

---

[1] The State points out that our prior statements regarding the officials' deliberate indifference are not the law of the case because they were dicta in the earlier decision. Nonetheless, I think it is unlikely that the State can change the mind of this exact same panel a little over a year later about the probability that they were deliberately indifferent.

argues that the finding of deliberate indifference is clearly erroneous. The state suggests that it is not chargeable with knowledge of the jail conditions. The record, however, demonstrates that the state knew that by refusing to accept felons it was causing severe overcrowding in Harris County jails.

The state's second argument denies liability because its officers had a good faith, objectively reasonable belief that the state owed county prisoners no duty. The state relies upon principles of qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and its requirement that the law be "clearly established at the time an action occurred." As plaintiffs point out, this doctrine is applicable only as a defense to the individual liability of persons. Owen v. City of Independence, 445 U.S. 622 (1980). The state enjoys no protection from any qualified immunity of a state official.

The closely related argument that given the asserted legal uncertainty of state duty it could not be found to have acted with deliberate indifference has more force. The state points to uncertainty of state responsibility for the care of felons in the county jail in light of rulings by the Ruiz court and legislation proposed by the Texas legislature; both signaled that prisoners who are ready for transfer to TDC remain the responsibility of the county until their transfer to TDC. We are not persuaded. The state elected to refuse felons to solve its own problems of overcrowding. We are not persuaded that the state's duty was so uncertain, as we explained in Alberti I.

4

The state also asserts that we should apply the higher standard of "malicious or sadistic intent." In _Seiter_, the Supreme Court held that the level of intent required to constitute cruel and unusual punishment depends upon the constraints facing the official. As examples, the Court contrasted actions responding to a prison disturbance, which must be taken quickly, under pressure, and with concern for compelling safety concerns with the provision of medical care to prisoners which "does not ordinarily clash with other equally important governmental responsibilities." We read _Seiter_ to hold that the constraints imposed on the officer which justify the "malicious and sadistic" standard must at least be of an emergency or immediate nature.

The state argues that it could not relieve overcrowding because the legislature would not appropriate more funds for prison expansion and it was constrained by concern for public safety inherent in early release of felons. Justice Scalia's opinion in _Seiter_ leaves open how difficulty in funding might negate the intent requirement. In _Alberti I_, we noted that "before _Seiter_, it was well established in this circuit that inadequate funding will not excuse the perpetuation of unconstitutional conditions of confinement." 937 F.2d at 999, citing _Smith v. Sullivan_, 611 F.2d 1039, 1044 (5th Cir. 1980). How the Supreme Court will develop the "funding" defense to eighth amendment violations is not certain. Regardless, the evidence that an absence of funding made the state unable to accept the convicted felons is equivocal. Indeed, the state has at earlier times pointed to the _Ruiz_ decree's setting of

5

population levels as the culprit. But as we explained in Alberti I, that decree was no barrier to the state's constitutional duty. The concern about the release of felons is the flip-side of the inadequate funding argument: if the state would simply expand its prison facilities, no excess release of prisoners would be necessary. We find no error in the finding by the district court that the state was deliberately indifferent and find no occasion for further exploring the "funding" defense.

The district court's conclusion that the county was deliberately indifferent to the unconstitutional conditions in its jail is not so easy. The record is mixed. There is evidence of "arguably formidable constraints" facing the county including the dramatic increase in the number of state ready-felons being kept in the county jail, largely beyond the county's control to prevent. Nonetheless, the district court found that the jails would exceed "constitutional capacity" with all ready-felons removed.

Whether county efforts to relieve overcrowding were sufficient to avoid a finding of deliberate indifference is a close case. The county can point to several things it did to reduce the jail population. Some of these were successful; some were not through the failure of other participants in the legal system to do their part. For example, the county encouraged local judges to use pretrial release for certain low-risk offenders, but the Special Master found that the judges were reluctant to do so. On the other hand, the county has continued to operate the jail over its constitutional capacity for some time. As we indicated in Alberti

6

I, "[w]hile the huge jump in the population of ready-felons might weigh against a finding of deliberate indifference, other facts could weigh in favor of such a finding." 937 F.2d at 1000. The district judge was intimately familiar with the push and shove of state government and its response to sorry prison conditions. This trial judge was uniquely informed of the county "mental state" and we decline to upset it. In short, the district court's finding of deliberate indifference is not clearly erroneous.

The county defendants assert problems with the remedies imposed against them by the district court. We declined to address the remedial issues in Alberti I. The main argument seems to be that the district court abused its discretion by imposing a cap on the jail population. The county defendants argue that this is the most intrusive remedy and therefore an abuse of discretion. Ruiz v. Estelle, 679 F.2d 1115, 1144 (5th Cir. 1982). A numerical cap on the number of prisoners is not an overly intrusive remedy. It gives the county maximum flexibility in determining on its own how to meet the population goals. The remaining contentions are without merit.

AFFIRMED.